UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



MARVIL HARDING and ALTON POWIS,

　　　　　Plaintiffs,

　　-against-

19-CV-11948 (BCM)

**ORDER**

NYC CRANE HOIST & RIGGING, LLC,
et al.,

　　　　　Defendants.

**BARBARA MOSES, United States Magistrate Judge**.

　　　　Plaintiffs Marvil Harding and Alton Powis have each settled their Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL) claims against defendants NYC Crane Hoist & Rigging, LLC and Thomas Auringer.  By means of two joint letters, each dated October 27, 2020 (Dkt. Nos. 30, 31), the parties now seek the Court's approval of the Harding Agreement (Dkt. No. 30-1) and the Powis Agreement (Dkt. No. 31-1) pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). At the Court's direction, plaintiffs filed a supplemental letter dated November 5, 2020 (Supp. Ltr.) (Dkt. No. 33), attaching their retainer agreements and their counsel's time and expense records.

　　　　The Harding Agreement requires defendants to pay $13,181.66 to settle Harding's claims. Harding Ag. ¶ 2. Of that sum, $8,589.11 will go to plaintiff Harding, *id.* ¶¶ 2(a), (b), and $4,592.55 will go to his attorney, Abdul K. Hassan, as a fee award (calculated at one-third of the gross settlement payment to Harding) plus reimbursement of expenses including filing fees and service costs.  *Id.* ¶ 2(c); *see also* Supp. Ltr. at 3-4.

　　　　The Powis Agreement requires defendants to pay $12,272.58 to settle Powis's claims. Powis Ag. ¶ 2. Of that sum, $7,983.00 will go to plaintiff Powis, *id.* ¶¶ 2(a), (b), and $4,289.53

will go to his counsel as a fee award (calculated at one-third of the gross settlement payment to Powis) plus reimbursement of expenses. *Id*. ¶ 2(c); *see also* Supp. Ltr. at 3-4.[1]

Each agreement includes two releases. Defendants release each plaintiff "of and from any and all claims, debts, obligations or liability whatsoever, whether known or unknown, that they had or may have against [plaintiff], as of the date of execution of this Agreement." Harding Ag. ¶ 2(f); Powis Ag. ¶ 2(f). Each plaintiff, in turn, releases defendants "of and from any and all claims in connection with [plaintiff's] employment with Defendants, as of the date of execution of this Agreement[.]" Harding Ag. ¶ 4; Powis Ag. ¶ 4. Although asymmetrical, the releases favor plaintiffs – who are giving a narrower release than they receive – and thus raise no fairness issue under *Cheeks*. *See Mendoza v. LGRC Corp.,* 2020 WL 1974210, at *2 (S.D.N.Y. Apr. 24, 2020) (quoting *Vasquez v. La Rola Rest., Inc.*, 2019 U.S. Dist. LEXIS 62090, at *4 (S.D.N.Y. Apr. 9, 2019)) ("As this Court has previously observed, the purpose of the judicial review process mandated by *Cheeks* 'is to ensure that the agreement is fair and reasonable to the *plaintiff.*'"); *Gulluoglu LLC*, 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (explaining that the court's concern for broad releases stems from the court's "obligation to police unequal bargaining power between employees and employers").

---

[1] Each settlement agreement specifies that the payments to the plaintiffs will be made on an installment schedule as follows: (a) three checks, each in the same amount, to be reported on an IRS Form W-2, will be made payable to each plaintiff (i) within 10 days of court approval of the settlement agreement, (ii) within 90 days of defense counsel receiving the executed settlement agreement, and (iii) within 180 days of defense counsel receiving the executed settlement agreement; and (b) three checks, each in the same amount, to be reported on an IRS Form 1099-MISC, will be made payable to each plaintiff (i) within 10 days of court approval of the settlement agreement, (ii) within 90 days of defense counsel receiving the executed settlement agreement, and (iii) within 180 days of defense counsel receiving the executed settlement agreement. Harding Ag. ¶¶ 2(a), (b); Powis Ag. ¶¶ 2(a), (b). The payments to plaintiffs' counsel will be made on the same schedule. Harding Ag. ¶ 2(c); Powis Ag. ¶ 2(c).

There is no confidentiality clause or other contractual restriction on any party's ability to speak about the case or its settlement. The proposed attorneys' fee awards are consistent with the contingency fee agreements signed by the plaintiffs, *see* Supp. Ltr. Ex. 2, and are lower than counsel's lodestar.[2]

Having reviewed the terms of both agreements, including the award of fees and expense reimbursement to plaintiffs' counsel, the Court finds that they are fair and reasonable as required by *Cheeks*, 796 F.3d at 199. Accordingly, the proposed settlements are **APPROVED**.

It is hereby **ORDERED** that this action is **DISMISSED** with prejudice and without costs.

The Clerk of Court is respectfully directed to close the case.

Dated: New York, New York
  December 3, 2020

        **SO ORDERED**.

        _____
        **BARBARA MOSES**
        **United States Magistrate Judge**

---

[2] Attorney Hassan calculates his aggregate lodestar, for both plaintiffs, as $14,604 at the "retainer rate" of $600 and as $10,953 at the "reduced fee-shifting rate" of $450 per hour, which courts within the Second Circuit have previously found to be reasonable for his services in wage and hour cases. *See* Supp. Ltr. at 3. As this Court has previously explained, the lodestar analysis, which requires submission of counsel's timesheets, remains relevant after *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 606 (2d Cir. 2020), which reaffirmed the district courts' obligation to "evaluate the reasonableness of the fees and costs," because it provides "a helpful cross-check" on a fee calculated as a percentage of the total recovery. *Villa Clemente v. Midtown E. NY LLC*, 2020 WL 5913595, at *3 (S.D.N.Y. Oct. 6, 2020). In this case, as in *Villa Clemente*, the cross-check "further supports the fairness of the proposed fee award." *Id.*

3